IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION


ARRON MICHAEL LEWIS                                                             PLAINTIFF

      v.                              Civil No.  6:14-cv-06147

KARCEY J. KIKER, Advanced Practice
Nurse (APN), Ouachita Regional Unit (ORU);
NURSE DENISE J. BARTHEL, ORU;
and NURSE ANDREA HAZELWOOD, ORU                               DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

      This is a civil rights case filed by the Plaintiff pursuant to 42 U.S.C. § 1983.  Plaintiff proceeds *pro se* and *in forma pauperis.*  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2014), the Honorable Robert T. Dawson, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

      Plaintiff is currently incarcerated in the Varner Supermax Unit of the Arkansas Department of Correction (ADC).  At the times relevant to this Complaint, Plaintiff was incarcerated in the Ouachita River Unit of the ADC.  Plaintiff maintains he was denied adequate medical care.

      The case is before me on the Summary Judgment Motion (ECF No. 20) filed by Separate Defendants Kacey Kiker and Denise Barthel.[1]  Plaintiff has responded (ECF No. 30).  Defendants filed a reply brief (ECF No. 33) and Plaintiff filed a sur-reply (ECF No. 34).  The Motion is ready for decision.

**1. Background**

      According to the allegations of the Amended Complaint (ECF No. 7), on Friday, October 3, 2014, Plaintiff was transferred to the Ouachita River Unit of the ADC.  At the time of transport,

---

[1]Service was returned as unexecuted on Nurse Andrea Hazelwood.  The United States Marshal was informed there was no record of a nurse by that name.  ECF No. 39.

Plaintiff had a dislocated right shoulder.

Plaintiff was initially assessed by Nurse Andrea Hazelwood.  Plaintiff alleges he informed Nurse Hazelwood that he was in severe pain, his right shoulder was dislocated, and he could not raise or move his arm.  Plaintiff alleges Nurse Hazelwood, after viewing his shoulder, said it looked like it was dislocated and he would have to wait until Monday, October 6, 2014, to be seen.  Plaintiff asserts that he was not given any pain medication or treatment and remained in severe pain for the entire weekend.

On Monday, October 6, 2014, Plaintiff alleges he was first seen by Nurse Denise J. Barthel. According to Plaintiff, after observing his shoulder, Nurse Barthel stated it was definitely dislocated and that Plaintiff would have to be seen by the provider, Advanced Practice Nurse (APN) Karcey J. Kiker, who came on duty at 8:00 a.m.  After a brief wait, Plaintiff was seen by APN Kiker who noted the shoulder deformity and traced it with her finger.  At that point, Plaintiff states APN Kiker advised the escort officers that she was not "dealing with this."

Plaintiff was taken back to his cell and did not receive any pain relieving medication or treatment for three more days.  Plaintiff alleges he was in severe pain and would occasionally lose feeling in his arm.  Plaintiff asserts that he was continually ignored by the medical staff.

After this three day period, Plaintiff was transferred to another unit.  As relief, Plaintiff seeks a declaratory judgment and compensatory and punitive damages.

## 2.  Applicable Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Once a party

moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." National Bank of Commerce v. Dow Chemical Co., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." National Bank, 165 F.3d at 607 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." Id. (citing, Metge v. Baehler, 762 F.2d 621, 625 (8th Cir. 1985)).

### 3.  Discussion

The sole issue raised by Defendants in this Summary Judgment Motion is whether or not Plaintiff exhausted his administrative remedies prior to his filing suit.  Defendants maintain Plaintiff did not.  Plaintiff maintains he submitted a grievance and an appeal but received no response to either.

### A.  The Exhaustion Requirement

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), requires exhaustion of available administrative remedies **before** an inmate files suit.  Booth v. Churner, 532 U.S. 731, 733-34 (2001). Section 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Exhaustion is mandatory.  Porter v. Nussle, 534 U.S. 516, 524-25 (2002).  In Jones v. Bock, 549 U.S. 199 (2007), the Supreme Court concluded that "to properly exhaust administrative

remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." Id. at 218 (internal quotation marks and citation omitted).  The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*  "[F]ailure to exhaust available administrative remedies is an affirmative defense, not a matter of subject matter jurisdiction." Lenz v. Wade, 490 F.3d 991, 993 n. 2 (8th Cir. 2007).

The Supreme Court in Booth v. Churner, 532 U.S. 731, 738-39 (2001) held that "exhaustion is required where administrative remedies are available even if the available administrative remedies do not provide the precise, or full, relief sought." Walker v. Maschner, 270 F.3d 573, 577 (8th Cir. 2001).  The exhaustion requirement applies to "all inmate suits about prison life." Porter, 534 U.S. at 532.  This is true whether the claims "involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Id.  "If exhaustion was not completed at the time of filing, dismissal is mandatory." Johnson v. Jones, 340 F.3d 624, 627 (8th Cir. 2003).

### B.  The Grievance Policy

The ADC has a written grievance procedure, Administrative Directive 14-16.  A two-step procedure is utilized with the first step involving efforts to informally resolve the issue and the second step consisting of the formal grievance. *Defendants' Exhibit* (hereinafter *Defs' Ex.*) A.  An informal attempt to resolve a grievance must be submitted within 15 days of the occurrence. *Defs' Ex.* A at pg. 5.  Directive 14-16 states in pertinent part:

> Inmates are required to attempt informal resolution of a problem/complaint prior to filing a grievance . . . On the Unit Level Grievance Form . . . the inmate should write a brief statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form.

*Id.* at pg. 5, Directive 14-16, IV, ¶ E(1)-(2).

The problem-solver "must sign and date the form, giving the inmate back the yellow and pink copies as receipts." *Id.*, IV, ¶ E(3). Once an informal grievance is submitted, the problem solver meets with the inmate within three days. *Id.* at pg. 6, IV, ¶ E(4)(a). Medical issues are referred to the Health Services Administrator (HSA) "as soon as practical, but in any event within one working day." *Id.* at pg. 6, IV, ¶ E(4)(c). The HSA is to respond within three working days from: submission of the Unit Level Grievance Form for Step one by the inmate to the problem-solver." *Id.* at pg. 7, IV, ¶ E(7).

If the problem-solver or HSA has failed to contact the inmate within three working days or or failed to return Step One,

> the inmate may proceed to Step 2, the formal grievance, without completion of Step 1. In that instance, Step 2, the formal grievance, must be filed no later than six (6) working days from the submission of the Unit Level Grievance Form pursuant to Step 1. . . . The inmate will submit a copy of his/her Unit Level Grievance Form using the pink or yellow copy, whichever is most legible, that he/she retained following the instructions for Step Two.

*Id.* at pgs. 7-8, IV, ¶ E(11).

The Step Two, formal grievance is submitted on the same Unit Level Grievance Form. *Id.* at pg. 8, IV, ¶ F. At the top of the form, the inmate must write in the date of submission of the Step Two grievance and state why he believes the informal resolution was unsuccessful. *Id.* at IV, ¶ F(1). Upon receipt, the Grievance Officer completes the box in the upper right hand corner of the form entitled for office use only. *Id.* at pg. 9, IV, ¶ F(3). The grievance is assigned a number, dated, and given a code. *Id.* Medical issues are coded 600. *Id.* at IV, ¶ F(3)(a). Within five working days, the Grievance Officer must transmit an acknowledgment or rejection of the grievance. *Id.* at IV, ¶ F(4). If the grievance is medical in nature, it is forward to the HSA for response. *Id.* at IV, ¶ F(5)(a).

Inmates are to receive a written response to their grievances on either a form entitled Warden/Center Supervisor Decision or a form entitled Health Services Response to the Unit Level Grievance within twenty (20) working days.  *Id.* at pg. 10, IV, ¶ F(7).  If the inmate does not receive a response within the time allowed, the inmate moves to the "next level of the process, an appeal to the Chief Deputy/Deputy/Assistant Director's Level within five (5) working days." *Id.* at IV, ¶ F(8). The Policy provides for extensions when a longer period of time is necessary to resolve the grievance.  *Id.* at IV, ¶ F(8).

Receipt of the appeal is to be acknowledged within five (5) working days.  *Id.* at pg. 12, IV, ¶ G(5).  A response is to be given within thirty (30) working days.  *Id.* at IV, ¶ G(6).  "The entire grievance procedure should be completed within seventy-six (76) working days unless a valid extension has been executed, or it can be documented that unforseen circumstances have occurred." *Id.* at pg. 13, IV, ¶ G(9).

"Inmates are only allowed to submit three formal grievances, Step Two, each seven-day period which begins each Saturday and ends on Friday." *Id.* at pg. 14, IV, J(1)(b).  The limit includes medical grievances.  *Id.*

### C.  Plaintiff's Grievances

This case was filed on December 18, 2014.  According to Defendants' grievance records, Plaintiff submitted seven formal medical grievances between October 2, 2014, and December 19, 2014: grievance numbers MX-14-02292, MX-14-02335, MX-14-02341, MX-14-2600, MX-14-2601, MX-14-2607, and MX-14-2626.  *Defts' Exs.* B & C.  Of these grievance numbers two , MX-14-2607 and MX-14-2626, were rejected on the grounds Plaintiff had submitted more than three Step Two grievances during the week.  The appeal decisions were not issued on the remaining five grievances

-6-

until January 8, 2015, for grievances MX-14-02292, MX-14-02335, and MX-14-2341, and February 23, 2015, for grievances MX-14-02600 and MX-14-02601.  Clearly, the appeal decisions were rendered after Plaintiff filed this case.

Plaintiff does not disagree with Defendants' records with respect to these seven grievances. Instead, he asserts there is another grievance he submitted.  On Tuesday, October 7, 2014, Plaintiff indicates he submitted a Step One Grievance.  *Plff's Ex.* A.  This was well within fifteen (15) days from the incident.  The grievance was received by Sergeant Blunt that same day and forwarded to medical for a response.  *Id.*  Pursuant to the Grievance Policy, Plaintiff retained, as receipts, the pink and yellow copies of the grievance form.

Plaintiff submitted the Step Two Grievance on Wednesday, October 15, 2014, noting that he had received no response to his Step One Grievance.  *Id.*  This is within six (6) working days of submission of Step One.  This form is marked received by Sergeant Turner that same day and indicates it was forwarded to the Grievance Officer.  *Id.*  Plaintiff asserts that he received no acknowledgment of the Step Two grievance within five (5) days and no written response to the grievance within twenty (20) days.  On Wednesday, October 29, 2014, Plaintiff asserts that he sent a copy of the pink receipt and a cover letter to the Deputy Director of Health Services.  Plaintiff states he received no response.

Defendants have submitted affidavits asserting that there is no record of this grievance ever having been received or assigned a grievance number.  Defendants assert that the Plaintiff has provided no verifiable evidence of administrative exhaustion.

I believe a question of fact precludes entry of summary judgment in Defendants' favor.  The grievance form submitted by the Plaintiff was signed as received at both Step One and Step Two.

-7-

Plaintiff has asserted by affidavit that he did not receive an acknowledgment form within five (5) working days of the submission of the Step Two Grievance and did not receive a written response within twenty (20) days. When the allotted time, Plaintiff maintains he went to the next level of the Grievance Procedure by mailing a copy of the grievance with a cover letter to the Deputy Director. Clearly, there is a question of fact as to whether the Plaintiff exhausted his administrative remedies.

### 4.  Conclusion

For the reasons stated, I recommend that the Defendants' Motion for Summary Judgment (ECF No. 20) be **DENIED.**

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED this 17th day of September 2015.**


/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE

-8-