IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

ARRON MICHAEL LEWIS                                                    PLAINTIFF

　　　　　v.　　　　　　　　Civil No.  6:14-cv-06147

KARCEY J. KIKER, Advanced Practice
Nurse (APN), Ouachita Regional Unit (ORU);
NURSE DENISE J. BARTHEL, ORU;
and NURSE ANDREA HAZELWOOD, ORU                        DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This is a civil rights case filed by the Plaintiff pursuant to 42 U.S.C. § 1983.  Plaintiff proceeds *pro se* and *in forma pauperis.*  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2016), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

Plaintiff is currently incarcerated in the East Arkansas River Unit of the Arkansas Department of Correction (ADC).  At the times relevant to this Complaint, Plaintiff was incarcerated in the Ouachita River Unit of the ADC.  Plaintiff maintains he was denied adequate medical care.

The case is before me for a determination of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit on December 18, 2014.  A hearing was held on September 8, 2016.  At the conclusion of the hearing, the issue was taken under advisement pending preparation of this report and recommendation.

**1.  Background**

Plaintiff's claim is that he was denied adequate medical care.  The claim involves a  period of time, beginning with his transfer on October 3, 2014, to the Ouachita River Unit (ORU) of the ADC.  He had a dislocated shoulder and alleges he did not receive adequate treatment or pain relief.

A few days later, Plaintiff testified he was transferred to the Tucker Maximum Unit.

Defendants filed a summary judgment motion that argued that Plaintiff had not exhausted his administrative remedies.  A report and recommendation concluded an issue of fact existed.  ECF No. 46.  The report and recommendation was adopted.  ECF No. 52.

Defendants then filed a motion asking for a hearing on the issue of exhaustion.  ECF No. 48.  The motion was granted.  ECF No. 53.  As noted above, the hearing was held on September 8, 2016.

Plaintiff testified that he filed a grievance regarding the denial of medical care for his dislocated shoulder on October 7, 2014.  Plaintiff's Exhibit (hereinafter Plff's Ex.) 3.  The grievance is marked as received by Sergeant Blunt on that date.  Id.

The grievance form has multiple copies in several different colors.  At the bottom of the grievance form, it states the yellow and pink copies are the inmate receipts, the blue copy is for the Grievance Officer, and the original grievance is returned to the inmate after completion of Step One and Step Two.  Plff's Ex. 3; Defendants' Exhibit (hereinafter Defts' Ex.) 21-1 at 6.  The area of the form where the actions taken to resolve the complaint at Step One are to be described is blank.  Plff's Ex. 3.

On October 15, 2014, Plaintiff completed step two, the filing of a formal grievance.  Id.  He noted he had received no answer to Step One.  Id.  The form was signed as received by Sergeant Turner on October 15, 2014, and forwarded to the Grievance Officer.  Id.

When he received no response at the unit level and no acknowledgment that the grievance had been received, Plaintiff testified he made a copy of the pink receipt and mailed it, with a cover letter, to the Office of the Deputy Director.  He believed he sent this on about October 25, 2014.  However, as outgoing mail is not logged, he testified he cannot prove that.  When he received no response in thirty days, he filed this lawsuit.  Plaintiff testified the grievance could have been lost,

dropped, or deliberately destroyed.

Plaintiff testified that he had filed over 100 grievances since 2014 and had received deputy director decisions on 87 of them. Plaintiff testified that he knew the grievance procedure quite well. If an inmate files multiple grievances, he can be subject to discipline. Plaintiff testified he had never been disciplined but had been warned.

As noted above, Plaintiff's October 7th grievance was not ever assigned a grievance number and no response was received to Step One, Step Two, or the final appeal to the deputy director. Plaintiff testified he did not submit a grievance about not getting a response to his October 7th grievance. He acknowledged that he could have filed another grievance for the same time period. Grievances must be filed within fifteen days of the event or action at issue.

There is, however, another grievance Plaintiff submitted on the same day, October 7, 2014, as an emergency grievance. Defts' Ex. 21-3 at 4. The grievance was signed by Sergeant Blunt and the Step One response is dated October 10, 2014, and says Plaintiff was seen on October 8th and October 9th and x-rays were taken. Id.

Plaintiff submitted the Step Two grievance on October 19, 2014. Defts' Ex. 21-3 at 4. It was signed for and forwarded to the Grievance Officer. Id. The grievance was assigned grievance number MX 14-2292. The warden's decision was issued on November 19, 2014. Id. at 2. Plaintiff appealed saying he just needed to exhaust his remedies. He further said: "Still not getting any medical treatment to this date." The deputy director's decision was issued on January 8, 2015. Id. at 1.

Plaintiff called Felicia Piggee, a thirteen year employee of the ADC, then assigned to the Varner Unit, as a witness. She testified she had worked as a problem solver for three or four years and was familiar with the grievance procedure. She testified that Plaintiff's exhibit one was the form

used for submitting a grievance at the ADC. The inmate fills out the form and once it is received the inmate gets the yellow and pink copies and the problem solver retains the white and blue copy.

As a problem solver, Piggie testified that she did not process Step Two. Instead, she would give the form to the Grievance Officer or put it in the Grievance Officer's box.

Plaintiff next called Shannon Cantrell as a witness. She testified she is currently a grievance supervisor, at the Varner Unit, but was a Grievance Officer for almost five years. Cantrell testified that the grievance policy is followed throughout the ADC. However, she then conceded she could not say what was done at units other than Varner. She also testified that an inmate could send in whatever he wanted.

Defendants' first witness was Shelly Byers, the medical grievance coordinator, for the deputy director. As part of her job, she keeps track of grievances. She testified that any mail received is acknowledged.

With respect to Plaintiff's exhibit three, Byers testified that there is nothing to indicate that it was ever received in the deputy director's office. Had it been received, she testified she would have acknowledged it. Documents may be mailed by truck mail or through the United States Postal Service.

Byers acknowledged that Plaintiff's exhibit three has signatures for both Step One and Step Two. However, she testified that if an inmate received no response to a grievance, he should have known it was never received.

She reiterated Plaintiff's testimony that the ADC does not log out going mail. Further, she stated there had been problems with the mail on occasion. However, she testified she had no reason to believe there were problems with the mail during the time frame at issue here. Further, she states that she was not aware of any other grievance during this time frame that was not received in the

-4-

deputy director's office.  Byers testified that Plaintiff would have known the deputy director did not receive the grievance when he did not receive an acknowledgment.

Defendants next called Charles Winston.  He testified he had lived side by side with the Plaintiff in a cell block for approximately three months.  Winston testified that he had filed 500 plus grievances.  The only problem he ever had was with getting the sergeant to sign the grievance at Step One.  He had no trouble with the mail or with receiving an acknowledgment.

Winston testified that he and the Plaintiff would talk about the lawsuits they filed.  Winston also testified that Plaintiff said he could back date documents to create what appeared to be an exhausted grievance.  Specifically, Winston testified that Plaintiff would raise the first page up and falsify the officer's signature.  At the time, the pages of the grievance form were still hooked together.

Winston stated he personally did not use any falsified documents.  Winston also testified that Plaintiff said he could fill out the IFP account certificate.  According to Winston, Plaintiff knew Winston was going to report Plaintiff's criminal actions.  Winston testified he notified someone at the prison about the forged documents.

On cross-examination, Winston testified that he was involved in an altercation with Plaintiff about Winston's meeting with Defendants' attorney.  Officers had to be called.  Winston testified he had asked Defendants' counsel for compensation in the amount of $400 for his testimony.  However, Defendants' counsel said that would not be proper.  Winston stated that his testimony was based on the truth.

Winston testified he had helped a friend, Joe Cook, with a lawsuit by drawing up a rough draft.  Winston testified he did not file the paperwork for Cook.

## 2.  Applicable Standard

A number of Courts of Appeal have held that questions of fact regarding exhaustion of administrative remedies are for the Court to decide.  For example, in Dillon v. Rogers, 596 F.3d 260 (5th Cir. 2010), the Fifth Circuit noted that the Seventh, Ninth, and Eleventh Circuits all agreed that judges may resolve factual disputes concerning exhaustion of remedies without the participation of a jury.  Id. at 271 (citing Pavey v. Conley, 544 F.3d 739, 741-42 (7th Cir. 2008); Bryant v. Rich, 530 F.3d 1368, 1373-77 (11th Cir. 2008); Wyatt v. Terhune, 315 F.3d 1108, 1119-20 (9th Cir. 2003)).

The Dillon court stated:

> [T]he factfinding powers of judges is not limited to addressing subject matter jurisdiction.  It also extends to deciding factual questions concerning certain affirmative defenses like personal jurisdiction and venue, which may be waived by a defendant.  Exhaustion resembles personal jurisdiction and venue in that it is an affirmative defense that allows defendants to assert that plaintiffs have not invoked the proper forum for resolving a dispute.  The Supreme Court has described exhaustion in similar terms, as a "rule of judicial administration" controlling access to the courts, akin to the doctrines like "abstention, finality, and ripeness . . . that govern the timing of federal-court decisionmaking." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992).  Since exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, we conclude that judges may resolve factual disputes concerning exhaustion without the participation of a jury.

Dillon, 596 F.3d at 271-72 (citations omitted); cf., Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir. 2001)(affirming holding of the district court that defendant did not meet its burden of establishing the affirmative defense or failure to exhaust).  I find this reasoning persuasive and will treat this issue as one to be resolved by the Court.

## 3.  Discussion

The sole issue before me is whether Defendants have established their affirmative defense of failure to exhaust administrative remedies.

### A.  The Exhaustion Requirement

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), requires exhaustion of available administrative remedies **before** an inmate files suit.  Booth v. Churner, 532 U.S. 731, 733-34 (2001).  Section 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Exhaustion is mandatory.  Porter v. Nussle, 534 U.S. 516, 524-25 (2002).  In Jones v. Bock, 549 U.S. 199 (2007), the Supreme Court concluded that "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules."  Id. at 218 (internal quotation marks and citation omitted).  The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  Id.  "[F]ailure to exhaust available administrative remedies is an affirmative defense, not a matter of subject matter jurisdiction."  Lenz v. Wade, 490 F.3d 991, 993 n. 2 (8th Cir. 2007).  Defendants have the burden of proof with respect to this defense.  Id.; see also Foulk, 262 F.3d at 697.

In Woodford v. Ngo, 548 U.S. 81, 94-95 (2006), the Court held that the PLRA required "proper exhaustion" of the "system's critical procedural rules."  Proper exhaustion "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'"  Id. at 91 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)(emphasis in original)).  "An inmate satisfies § 1997e(a) by pursuing the prison grievance process to its final stage to an adverse decision on the merits."  Porter v. Sturm, 781 F.3d 448, 451 (8th Cir. 2015).

In <u>Booth</u>, the Court stated that the ordinary meaning of the word available is "capable of use for the accomplishment of a purpose" and that "which is accessible or may be obtained." <u>Booth</u>, 532 U.S. at 737-38.  "[A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end--with officers unable or consistently unwilling to provide any relief to aggrieved inmates." <u>Ross v. Blake</u>, 136 S. Ct. 1850, 1859 (2016)(citation omitted).  In <u>Ross</u>, the Court held that administrative remedies are not available "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." <u>Ross v. Blake</u>, 136 S. Ct. 1850, (2016).

**B.  The Grievance Policy**

The ADC has a written grievance procedure, Administrative Directive 14-16.  A two-step procedure is utilized with the first step involving efforts to informally resolve the issue and the second step consisting of the formal grievance. *Defendants' Exhibit* (hereinafter *Defts' Ex.*) A.  An informal attempt to resolve a grievance must be submitted within 15 days of the occurrence. *Defts' Ex.* A at pg. 5.  Directive 14-16 states in pertinent part:

> Inmates are required to attempt informal resolution of a problem/complaint prior to filing a grievance . . . On the Unit Level Grievance Form . . . the inmate should write a brief statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form.

*Id.* at pg. 5, Directive 14-16, IV, ¶ E(1)-(2).

The problem-solver "must sign and date the form, giving the inmate back the yellow and pink copies as receipts." *Id.*, IV, ¶ E(3).  Once an informal grievance is submitted, the problem solver meets with the inmate within three days. *Id.* at pg. 6, IV, ¶ E(4)(a).  Medical issues are referred to the Health Services Administrator (HSA) "as soon as practical, but in any event within one working

day." *Id.* at pg. 6, IV, ¶ E(4)(c).  The HSA is to respond within three working days from:  submission

of the Unit Level Grievance Form for Step One by the inmate to the problem-solver." *Id.* at pg. 7,

IV, ¶ E(7).

 If the problem-solver or HSA has failed to contact the inmate within three working days or

or failed to return Step One,

> the inmate may proceed to Step 2, the formal grievance, without completion of Step
> 1.  In that instance, Step 2, the formal grievance, must be filed no later than six (6)
> working days from the submission of the Unit Level Grievance Form pursuant to Step
> 1. . . .  The inmate will submit a copy of his/her Unit Level Grievance Form using the
> pink or yellow copy, whichever is most legible, that he/she retained following the
> instructions for Step Two.

*Id.* at pgs. 7-8, IV, ¶ E(11).

 The Step Two, formal grievance is submitted on the same Unit Level Grievance Form.  *Id.*

at pg. 8, IV, ¶ F.  At the top of the form, the inmate must write in the date of submission of the Step

Two grievance and state why he believes the informal resolution was unsuccessful.  *Id.* at IV, ¶ F(1).

Upon receipt, the Grievance Officer completes the box in the upper right hand corner of the form

entitled for office use only.  *Id.* at pg. 9, IV, ¶ F(3).  The grievance is assigned a number, dated, and

given a code.  *Id.*  Medical issues are coded 600.  *Id.* at IV, ¶ F(3)(a).  Within five working days, the

Grievance Officer must transmit an acknowledgment or rejection of the grievance.  *Id.* at IV, ¶ F(4).

If the grievance is medical in nature, it is forward to the HSA for response.  *Id.* at IV, ¶ F(5)(a).

 Inmates are to receive a written response to their grievances on either a form entitled

Warden/Center Supervisor Decision or a form entitled Health Services Response to the Unit Level

Grievance within twenty (20) working days.  *Id.* at pg. 10, IV, ¶ F(7).  If the inmate does not receive

a response within the time allowed, the inmate moves to the "next level of the process, an appeal to

the Chief Deputy/Deputy/Assistant Director's Level within five (5) working days." *Id.* at IV, ¶ F(8).

The Policy provides for extensions when a longer period of time is necessary to resolve the grievance. *Id.* at IV, ¶ F(8).

Receipt of the appeal is to be acknowledged within five (5) working days. *Id.* at pg. 12, IV, ¶ G(5). A response is to be given within thirty (30) working days. *Id.* at IV, ¶ G(6). "The entire grievance procedure should be completed within seventy-six (76) working days unless a valid extension has been executed, or it can be documented that unforseen circumstances have occurred." *Id.* at pg. 13, IV, ¶ G(9).

"Inmates are only allowed to submit three formal grievances, Step Two, each seven-day period which begins each Saturday and ends on Friday." *Id.* at pg. 14, IV, J(1)(b). The limit includes medical grievances. *Id.*

### C.  Plaintiff's Grievances

This case was filed on December 18, 2014. According to Defendants' grievance records, Plaintiff submitted seven formal medical grievances between October 2, 2014, and December 19, 2014: grievance numbers MX-14-02292, MX-14-02335, MX-14-02341, MX-14-2600, MX-14-2601, MX-14-2607, and MX-14-2626. *Defts' Exs.* B & C. Of these grievance numbers two , MX-14-2607 and MX-14-2626, were rejected on the grounds Plaintiff had submitted more than three Step Two grievances during the week. The appeal decisions were not issued on the remaining five grievances until January 8, 2015, for grievances MX-14-02292, MX-14-02335, and MX-14-2341, and February 23, 2015, for grievances MX-14-02600 and MX-14-02601. Clearly, the appeal decisions were rendered after Plaintiff filed this case.

Plaintiff does not disagree with Defendants' records with respect to these seven grievances. Instead, he asserts there is another unaccounted for grievance he submitted. On Tuesday, October

-10-

7, 2014, Plaintiff indicates he submitted a Step One grievance. *Plff's Ex.* A. This was well within fifteen (15) days from the incident. The grievance indicates it was received by Sergeant Blunt that same day and forwarded to medical for a response. *Id.* Pursuant to the Grievance Policy, Plaintiff states he retained, as receipts, the pink and yellow copies of the grievance form.

Plaintiff submitted the Step Two grievance on Wednesday, October 15, 2014, noting that he had received no response to his Step One Grievance. *Id.* This is within six (6) working days of submission of Step One. This form is marked received by Sergeant Turner that same day and indicates it was forwarded to the Grievance Officer. *Id.* Plaintiff asserts that he received no acknowledgment of the Step Two grievance within five (5) days and no written response to the grievance within twenty (20) days. On Wednesday, October 29, 2014, Plaintiff asserts that he sent a copy of the pink receipt and a cover letter to the Deputy Director of Health Services. Plaintiff states he received no response.

Defendants have submitted affidavits asserting that there is no record of this grievance ever having been received or assigned a grievance number. Defendants assert that there is no verifiable evidence of administrative exhaustion.

I agree for several reasons. First, Plaintiff was knowledgeable about the grievance procedure having filed in excess of 100 of them with 87 having been completely exhausted. Second, given this, he would have immediately known something was wrong when he did not receive an acknowledgment of a grievance. Third, and perhaps more importantly, there is no reason for the Plaintiff to submit more than one grievance on the same day about the same issue--his shoulder. Grievance MX-14-2292 was submitted by the Plaintiff on October 7, 2014, and dealt with his shoulder. Defts' Ex. 21-3 at 4. Plaintiff asserted that his right arm was dislocated and he was in

-11-

extreme pain.  Id.  He indicated it was an emergency grievance.  Id.  Plaintiff failed to timely submit

Step Two.  Id.  For this reason, the merits of his grievance were not addressed at the warden's or

deputy director's levels.  Id. at 1-2.  Fourth, Plaintiff was well aware of the limit of three grievances

within a seven day period having had several grievances denied for this reason.  Finally, Plaintiff

pursued his emergency grievance dated October 7 to a final decision to in his own words exhaust his

administrative remedies.

### 4.  Conclusion

For the reasons stated, I recommend that the judgment be entered in Defendants' favor on

the grounds that Plaintiff failed to exhaust his administrative grievances prior to filing this lawsuit.

42 U.S.C. § 1997e(a)(exhaustion of available administrative remedies **before** an inmate files suit).

**The parties have fourteen (14) days from receipt of the report and recommendation in**

**which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely**

**objections may result in waiver of the right to appeal questions of fact.  The parties are**

**reminded that objections must be both timely and specific to trigger de novo review by the**

**district court.**

**DATED this 9th day of March 2017.**

/s/ Barry A. Bryant                              
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE

-12-