IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

ARRON MICHAEL LEWIS                                                                    PLAINTIFF

v.                                          Case No. 6:14-cv-6147

JARCEY J. KIKER, Advanced Practice
Nurse (APN), Ouachita Regional Unit (ORU);
NURSE DENISE J. BARTHEL, ORU;
and NURSE ANDREA HAZELWOOD, ORU                                                       DEFENDANTS

## ORDER

Before the Court is the Report and Recommendation filed March 9, 2017, by the Honorable Barry A. Bryant, United States Magistrate Judge for the Western District of Arkansas. (ECF No. 125). Plaintiff Arron Michael Lewis filed objections to the Report and Recommendation. (ECF No. 126). The Court finds the matter ripe for consideration.

### I. BACKGROUND

Plaintiff filed this suit pursuant to 42 U.S.C. § 1983, alleging that he was denied adequate medical care during a period of time in which he was incarcerated in the Ouachita River Unit ("ORU") of the Arkansas Department of Corrections ("ADC"). The claim involves a period of time, beginning with Plaintiff's transfer on October 3, 2014, to the ORU, and ending with his subsequent transfer to the Tucker Maximum Unit ("Tucker") of the ADC on October 6, 2014. During this period, Plaintiff alleges that he had a dislocated shoulder and that he did not receive adequate treatment or pain relief.

Defendant's grievance records show that Plaintiff submitted seven formal medical

grievances[1] between October 7, 2014, and December 19, 2014.[2] This case was filed against certain ORU medical personnel on December 18, 2014.

Plaintiff maintains that on October 7, 2014, after he was transferred to Tucker, he submitted a grievance complaining of a lack of medical care received while he was held at ORU. Plaintiff states that this grievance went unaccounted-for at all levels of the grievance procedure (the "missing grievance"). Plaintiff states that he gave the step-one informal resolution to Sergeant Blunt, who was to forward it to a problem-solver for a response, but that no response came within the time frame set out in the ADC grievance policy. Plaintiff states that, pursuant to the grievance policy, he then submitted a formal grievance on October 15, 2014 in the form of his yellow carbon copy of his informal resolution.[3] This formal grievance was marked received by a Sergeant Turner and was to be forwarded to a grievance officer for a response, but no response came within the time frame set out in the grievance policy. Plaintiff states that he then submitted an appeal on October 29, 2014, in the form of a cover letter and a copy of his pink copy of his informal resolution. This appeal was not acknowledged as received and received no response within the time frame set out in the grievance policy. Defendants maintain that, per the grievance policy, every informal resolution and formal grievance that are received are

---

[1] The instant Report and Recommendation provides an in-depth explanation of the ADC grievance policy, and the Court will not recount it at length. In short, the grievance policy requires that a prisoner first submit an informal resolution. If the informal resolution is not resolved to the prisoner's satisfaction, or not responded to at all within a specified time frame, the prisoner may then submit a formal grievance. If the formal grievance is not resolved to the prisoner's satisfaction, or not responded to at all within a specified time frame, the prisoner may then submit an appeal. Once a rejection or written decision is issued on the appeal, the grievance process is complete and the prisoner's remedies are exhausted.

[2] These grievances complained about the medical care provided to Plaintiff at Tucker. Of these grievances, two were rejected outright on the grounds that they violated ADC's policy of only allowing prisoners to file three grievances in any seven-day period. The other five grievances were not exhausted until January 8, 2015, at the earliest.

[3] Prisoners who submit an informal resolution retain a yellow and a pink carbon copy of the grievance. The grievance policy states that, in the event that the prisoner receives no response to their informal resolution, the prisoner should continue to the formal stage of the grievance procedure by submitting the most legible of their yellow or pink copies.

acknowledged and assigned a grievance number, and that there is no record of this missing grievance ever being received or being assigned a grievance number at any level of the grievance process.

On April 16, 2015, Defendants filed a motion for summary judgment for lack of administrative exhaustion.[4] (ECF No. 20). On September 17, 2015, Judge Bryant issued a Report and Recommendation, recommending that the summary judgment motion be denied because an issue of fact existed as to whether Plaintiff exhausted his administrative remedies prior to filing this suit. (ECF No. 46). Specifically, Judge Bryant found that an issue of fact existed because Plaintiff alleges to have filed a medical grievance—which received no acknowledgment or response—and subsequently submitted an appeal of that grievance—also receiving no acknowledgement or response. Defendants, however, maintain that they have no record of ever receiving the grievance or its appeal, and thus they argue that there is no verifiable evidence supporting a conclusion that Plaintiff exhausted his administrative remedies. Thus, Judge Bryant recommended denial of Defendants' summary judgment motion for lack of exhaustion. On October 10, 2015, the Honorable Robert T. Dawson, District Judge for the Western District of Arkansas, adopted that Report and Recommendation.[5] (ECF No. 52). Defendants moved for a hearing on the issue of exhaustion of remedies, arguing that district

---

[4] Under 42 U.S.C. § 1997e(a), exhaustion of administrative remedies is mandatory before a prisoner may bring a section 1983 action with respect to prison conditions. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal quotation marks omitted); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006) ("[P]roper exhaustion of administrative remedies . . . means using all steps that the agency holds out, and doing so *properly*."). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. A prisoner's remedies are exhausted "when [the] inmate pursues the prison grievance process to its final stage and receives an adverse decision on the merits." *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012).

[5] This case was transferred to the undersigned on December 28, 2015.

3

courts can resolve issues of fact involving administrative exhaustion. (ECF No. 48). Judge Bryant granted the motion and held a hearing on the issue of exhaustion on September 8, 2016, at which both parties presented witnesses.[6]

On March 9, 2017, Judge Bryant issued the instant Report and Recommendation, recommending that judgment be entered in Defendants' favor because Plaintiff failed to exhaust his administrative remedies before filing this lawsuit under 42 U.S.C. § 1983. On April 10, 2017, Plaintiff filed objections to the Report and Recommendation.

## II. DISCUSSION

According to 28 U.S.C. § 646(b)(1), the Court will conduct a *de novo* review of all issues related to Plaintiff's missing grievance. Plaintiff's objections contain six numbered objections. Objection one makes the conclusory claim that the Report and Recommendation does not rely on the undisputed facts of the case. Objections two, three, and five argue that Plaintiff did everything that was required by the grievance policy to exhaust his remedies, and thus the Court should find that he exhausted his remedies due to the lack of response to his appeal. Objection four makes the conclusory claim that Defendants offered no proof that Plaintiff did not follow each step of the grievance procedure. Objection six challenges the reasons Judge Bryant gave for concluding that Plaintiff had not exhausted his remedies.

### A. Lack of Evidence Showing that Plaintiff Exhausted his Remedies

After conducting a hearing on exhaustion and hearing the testimony of witnesses offered by both parties, Judge Bryant concluded that there was no verifiable evidence that Plaintiff

---

[6] The instant Report and Recommendation cited cases from the Fifth, Seventh, Ninth, and Eleventh Circuits stating that judges may resolve disputes of fact regarding exhaustion of remedies. The Second and Third Circuits also utilize this practice. *See Messa v. Goord*, 652 F.3d 305, 308 (2d Cir. 2011); *Drippe v. Tobelinski*, 604 F.3d 778, 782 (3d. Cir. 2010). Although the Eighth Circuit does not appear to have spoken on the issue, Arkansas federal district courts have held hearings to resolve questions of fact regarding exhaustion. *See* Minute Entry for Proceedings, *Mason v. Corizon, Inc. et al.*, 6:13-cv-6110 SOH (W.D. Ark. Oct. 28, 2015), ECF No. 68; Evidentiary Hearing, *Langford v. Ifediora et al.*, 5:05-cv-0216 BSM (E.D. Ark. Oct. 14, 2011), ECF No. 297.

exhausted his remedies before bringing this suit with respect to the missing October 7, 2014 grievance.[7] Judge Bryant was unpersuaded by Plaintiff's argument that he filed both a grievance and a subsequent appeal that are essentially missing, as they were never acknowledged or responded to. Judge Bryant listed several reasons supporting his conclusion that Plaintiff did not exhaust his remedies with respect to any grievance filed between October 7, 2014, and December 19, 2014.

Plaintiff makes multiple objections to Judge Bryant's conclusion. First, Plaintiff objects generally that Judge Bryant did not make his determination based on the undisputed facts of the case. In support of this contention, Plaintiff cites to page seven of Judge Bryant's first Report and Recommendation on summary judgment (ECF No. 46) and argues that in this report, Judge Bryant states that it is undisputed that Plaintiff completed every step of the grievance procedure. Page seven of the first Report and Recommendation states that Plaintiff asserts that he submitted an appeal, which received no response.

The Court is unpersuaded by Plaintiff's argument. Page seven of the first Report and Recommendation is insufficient to show that Plaintiff completed every step of the grievance procedure with respect to his missing grievance. The Report and Recommendation does not state definitively that Plaintiff submitted his appeal, but rather that he claims to have done so. The record does not indicate that Plaintiff offered any proof that he submitted the appeal other than an affidavit stating as such.[8] Moreover, Defendants argued against Plaintiff's assertion in

---

[7] Judge Bryant also found that there was no evidence showing that Plaintiff exhausted any of the seven grievances relating to the medical care provided by Tucker, filed between October 7, 2014, and December 19, 2014, before Plaintiff filed this lawsuit.

[8] The Court notes that Plaintiff offered as evidence a copy of the informal resolution form, featuring the dates he submitted his informal resolution and formal grievance—and the signatures of the ADC staff who apparently accepted them—but that Plaintiff offered no such evidence regarding his appeal, such as a copy of the cover letter he claims to have submitted.

their reply brief for summary judgment on exhaustion, attaching documents to "underscore the fact that Plaintiff has not completed the inmate grievance process as to any relevant medical grievance prior to initiating the instant action." (ECF No. 33). This dispute of fact led to Judge Bryant recommending that the summary judgment motion be denied. Subsequently, Defendants moved for a hearing to allow the Court to resolve the issue of fact relating to exhaustion.

On September 8, 2016, Judge Bryant held a hearing on exhaustion, at which the parties were allowed to present witnesses. The instant Report and Recommendation summarizes the testimony of each witness. Plaintiff testified that he mailed his appeal. Defendants' witnesses testified that the appeal was never received, and that there was no issue with the ADC mail system during that time. Plaintiff sheds no light as to how the appeal went missing, other than offering speculation that ADC personnel may have "misplaced, lost, or [thrown the appeal] away." (ECF No. 34). Defendants also offered Charles Winston as a witness, who testified that he was imprisoned next to Plaintiff's cell for several months, and that Plaintiff told him that he could back-date grievance forms and falsify ADC officials' signatures to make it appear as if the grievance had been exhausted.[9] Winston also testified that he has filed over five hundred grievances and has not ever had an issue with the mail or his grievances receiving acknowledgements.

It appears to the Court that Judge Bryant, after holding an exhaustion hearing and listening to the testimony of the various witnesses presented by both parties, weighed the credibility of the witnesses and considered their testimony, and that Judge Bryant credited Defendants' witnesses more than Plaintiff's. In doing so, Judge Bryant concluded that there was

---

[9] Although Judge Bryant did not state as such, the Court suspects that this testimony played a role in the instant Report and Recommendation's conclusion, especially given that the printed name, signature, and date written by Sergeant Blunt on Grievance MX-14-2292 (ECF No. 21-3, at 4) appear different in certain aspects to Sergeant Blunt's printed name, signature, and date on the missing grievance (ECF No. 31, at 3).

6

no verifiable evidence that Plaintiff exhausted his remedies before filing this case, and recommends that judgment be entered in Defendants' favor.

The Court agrees. The evidence does not conclusively demonstrate that Plaintiff submitted the necessary documents—in this case, his appeal—to exhaust his remedies. At best, Plaintiff has merely claimed that he placed the appeal in the mail, and this claim is called into question by Defendants' witnesses, who testified that there were no issues with the mail during the time in question, and that they did not receive the appeal. The testimony regarding the mail is even more compelling when the Court considers the fact that Plaintiff filed a second grievance regarding his shoulder on October 7, 2014—the same day he claims to have first filed the missing informal grievance. This second grievance was delivered to the correct individual, promptly acknowledged and responded to, and Plaintiff was ultimately able to exhaust his remedies as to that grievance during the same time period that the missing grievance allegedly went ignored. In the absence of any other evidence, the Court agrees with Judge Bryant's determination of this factual dispute and finds that there is no verifiable evidence that Plaintiff exhausted his remedies before filing this case.

Plaintiff also objects to each of the reasons Judge Bryant gave in support of his conclusion. Specifically, Plaintiff objected to the Report and Recommendation's statements that: there was no reason for Plaintiff to have filed two grievances on the same day regarding his shoulder; that Plaintiff was an experienced grievance-filer and was aware of the three-per-week grievance limit; and that Plaintiff pursued his other October 7, 2014 grievance regarding his shoulder—Grievance MX-14-2292—to a final decision in order to, in his own words, exhaust his administrative remedies. The Court has considered these objections and finds that they are insufficient to overcome Judge Bryant's recommendation. These objections concern Plaintiff's

grievances filed at Tucker regarding medical care provided by Tucker. However, this case involves claims made against ORU medical staff regarding medical care provided at ORU. Therefore, the Court finds that the grievances concerning Tucker have no practical application to this case.

As discussed above, the Court agrees with Judge Bryant's determination of this factual dispute and finds that there is no verifiable evidence that Plaintiff exhausted his remedies before filing this case. The Court finds that Plaintiff's objections may be overruled and that the Report and Recommendation may be adopted on this basis. However, Plaintiff also objected on the basis that he should be excused from the obligation of exhausting his remedies. The Court will now address this argument.

**B. Lack of Response to Appeal**

Plaintiff argues that the grievance policy does not allow for exhaustion of remedies until an appeal has been ruled on, and that he was unable to exhaust his remedies because he never received a ruling on his appeal. Thus, Plaintiff argues essentially that the Court should excuse him from the obligation of exhausting his remedies because his appeal was not responded to. He argues further that he did everything that was explicitly required under the grievance policy, and that the policy does not provide any steps that must be taken if an appeal is not acknowledged or responded to. In support of this argument, Plaintiff cites cases from other jurisdictions holding that prisoners who received no response to their grievances had exhausted their remedies because they could not proceed to their appeal of the grievance process without a response.

The Court notes that Plaintiff provided the Court with no binding authority in support of this argument, and that all of Plaintiff's cited cases involve un-responded-to grievances—the equivalents of the formal grievance under the ADC grievance policy. Plaintiff did not provide

8

the Court with any authority discussing whether failure to exhaust remedies may be excused when a prison's grievance policy requires a ruling on the prisoner's appeal, and no response is ever given to the appeal.

One reason Judge Bryant gave for finding that Plaintiff had not exhausted his remedies was the fact that Plaintiff had filed over one-hundred grievances and fully exhausted a majority of them. Shelly Byers, ADC's medical grievance coordinator, testified at the exhaustion hearing that all mail is acknowledged upon receipt, and that there was no evidence to indicate that Plaintiff's grievance was ever received, as it would have been acknowledged if it was. Byers testified further that as an experienced grievance filer, Plaintiff should have known that his grievance was not received by the fact that it received no response. Judge Bryant discusses this testimony in his Report and Recommendation and lists it as a second reason for concluding that Plaintiff has not exhausted his administrative remedies.

As discussed above, the ADC grievance policy is a three-tiered process: first, the prisoner must submit an informal resolution. The policy states that if the prisoner is unsatisfied with the response or receives no timely response, the prisoner must then submit a formal grievance. If the prisoner is unsatisfied with the response or receives no timely response, the prisoner must then submit an appeal. Once the appeal is ruled on, the prisoner has exhausted his remedies.

Plaintiff's objection raises the question of whether Plaintiff's administrative remedies were rendered "unavailable" by the lack of response to his missing appeal. Although prisoners are required to exhaust their remedies prior to filing a section 1983 suit, they are only required to exhaust "available" remedies. Available remedies are "capable of use for the accomplishment of a purpose" and that "which is accessible or may be obtained." *Booth v. Churner*, 532, U.S. 731,

737-38 (2001). A remedy is unavailable: (1) when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief;" (2) when the "administrative scheme might be so opaque that it becomes, practically speaking, incapable of use;" or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016). Plaintiff has not argued that any of the three situations discussed in *Ross* are applicable in this case, and the Court does not believe that any are.

It might be possible that Plaintiff found himself at a "dead end" or that the policy was prohibitively "opaque" if the record contained evidence demonstrating that his missing appeal was actually submitted and then was subsequently lost or destroyed by ADC staff. However, Plaintiff has not demonstrated that. At best, he has offered only his claim that he placed the appeal in the mail, and this claim is called into question by Defendants' witnesses, who testified that there were no issues with the mail system during the time in question, and that they did not receive the appeal. The testimony regarding the mail is even more compelling when the Court considers the fact that Plaintiff filed a second grievance regarding his shoulder on October 7, 2014—the same day he claims to have filed the missing grievance. This second informal resolution was delivered to the correct individual, promptly acknowledged and responded to, and Plaintiff was ultimately able to exhaust his remedies as to that grievance during the same time period that the missing grievance allegedly went ignored.

The Court is troubled by the notion of excusing Plaintiff's failure to exhaust his remedies in this situation due to his appeal receiving no response without any evidence, other than his own word, that he actually submitted an appeal. To do so would effectively allow ADC prisoners to claim that they had submitted an appeal for remedy exhaustion—without actually having done

so—and claim that they received no response, thereby easily sidestepping the PLRA's well-established requirement that prisoners must first fully exhaust their administrative remedies prior to filing a section 1983 action. The Court's reluctance is heightened in light of Winston's testimony at the exhaustion hearing that Plaintiff stated that he can falsify grievance forms to appear as though he has completed various stages of the grievance process without actually having done so. The Court's role in this Order is to resolve the issues of fact surrounding exhaustion of remedies, and based on the testimony and evidence presented at the exhaustion hearing, the Court agrees with Judge Bryant that the facts do not establish that Plaintiff has exhausted his administrative remedies.

### III. CONCLUSION

Upon *de novo* review of the Report and Recommendation, and for the reasons discussed above, the Court hereby overrules Plaintiff's objections and adopts the Report and Recommendation. (ECF No. 125). Plaintiff's case is hereby **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**, this 16th day of May, 2017.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge